**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

CASEY STOERMER,

      Petitioner,  :  Case No. 3:20-cv-133

 - vs -         District Judge Thomas M. Rose
             Magistrate Judge Michael R. Merz

Warden,
 London Correctional Institution,

             :
      Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits. Relevant filings include the Petition (ECF No. 1), the State Court Record (ECF No. 8), Respondent's Return of Writ (ECF No. 9), the Supplemental State Court Record (ECF No. 12), and Petitioner's Reply (ECF No. 16).

**Litigation History**

On November 7, 2016, the Clark County Grand Jury indicted Stoermer on one count of Having Weapons Under Disability in violation of Ohio Revised Code § 2923.13(A)(3)) (Count 1); one first-degree felony count of Trafficking in Cocaine in violation of Ohio Revised Code § 2925.03(A)(2))(Count 2); one first-degree felony count of Possession of Cocaine in violation of Ohio Revised Code § 2925.11(A))(Count 3); one third-degree felony count of Trafficking in Cocaine in violation of Ohio Revised Code § 2925.03(A)(2))(Count 4); and one third-degree felony count of

1

Possession of Cocaine in violation of Ohio Revised Code § 2925.11(A))(Count 5). The two trafficking counts carried "firearm" and "occurred in the vicinity of a juvenile" specifications[1]; the two possession counts carried a firearm specification (Indictment, State Court Record, ECF No. 8, Ex. 1). After denial of his motion to suppress, Stoermer was tried by a jury which convicted him on all counts. Acting under Ohio Revised Code § 2941.25, the trial court merged the related possession and trafficking counts and sentenced Stoermer to an aggregate eighteen years imprisonment.

Stoermer appealed and his convictions and sentence were affirmed. *State v. Stoermer,* 2018-Ohio-4522 (Ohio App. 2nd Dist. Nov. 9, 2018), appellate jurisdiction declined, *State v. Stoermer*, 2019-Ohio-769 (2019), *cert. denied*, 140 S. Ct. 119 (2019). On February 7, 2019, Stoermer filed a Petition to Vacate or Set Aside Conviction under Ohio Revised Code § 2953.21. (Petition, State Court Record, ECF No. 8, Exhibit 23). The trial court denied relief and the Second District again affirmed. *State v. Stoermer,* 2019-Ohio-3804 (Ohio App. 2nd Dist., Sept. 20, 2019), appellate jurisdiction declined, 2019-Ohio-5193 (2019).

Stoermer then filed his Petition for Writ of Habeas Corpus in this Court on March 19, 2020, pleading the following grounds for relief:

> **Ground One**: The Petitioner's protections against Double Jeopardy in the Fifth Amendment to the United States Constitution were violated when he was convicted and sentenced on separate charges for trafficking and possession of the same drugs.
>
> **Supporting Facts:** The Petitioner was convicted and sentenced on both trafficking and possession charges for drugs found in his apartment as well as drugs found a vehicle in the driveway during the same search. The State presented no evidence that he possessed different quantities of cocaine with a different animus or intent. The drugs at issue were the same drugs and the storage in two different places is of no consequence. The double convictions and double sentences violate double jeopardy.

(Petition, ECF No. 1, PageID 5.)

---

[1] A firearm specification, if proved at trial, requires a mandatory consecutive three years imprisonment.

> **Ground Two:** The petitioner was denied the effective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution.
>
> **Supporting Facts:** A key issue in this case was whether the police made a lawful entry into the Petitioner's apartment. The police had no warrant and the police claimed in the suppression hearing that they entered Stoermer's living quarters upon the request of his landlord, Aaron Smith, whom the police claimed wanted the Petitioner to babysit his children because Smith was under arrest. Trial counsel let this testimony go unrebutted and the motion to suppress was denied as a result. In the post-conviction petition, this Petitioner presented unrebutted testimony from Aaron Smith that he told Petitioner's trial counsel prior to the suppression hearing that he never asked police to rouse the Petitioner to watch his kids. Instead, Smith asserted that he asked police to call his wife, who worked nearby, to come and watch the children. When police did eventually call his wife, she arrived within l0-15 minutes. Smith also testified by affidavit that immediately upon his arrest, police began asking questions about the Petitioner's whereabouts. Once Smith told police that Petitioner was upstairs, four officers proceeded upstairs with their guns drawn. Trial counsel had evidence available to him that demonstrated there was no exigent circumstance justifying the warrantless entry; Smith did not consent to a search; and, even if he had consented, he lacked the legal authority to give consent. Trial counsel never presented any of this evidence to the court and trial counsel failed to subject the State's case to meaningful adversarial testing. The Petitioner was prejudiced because the State was permitted to present evidence that should have been suppressed because it was obtained in violation of the Fourth Amendment.

(Petition, ECF No. 1, PageID 7.)

# Analysis

**Ground One:  Violation of the Double Jeopardy Clause**

In his First Ground for Relief Stoermer asserts that his separate sentences "for drugs found

in his apartment as well as drugs found [in] a vehicle in the driveway during the same search" violate his constitutional protection against double jeopardy. Respondent defends this Ground for Relief on the merits, asserting there is no double jeopardy violation under these circumstances (Return, ECF No. 8, PageID 866-69.)

In his Reply Stoermer asserts that on the date and at the time in question he possessed one stash of cocaine, with part of it being on his person and part of it being in his car which was parked within the curtilage of his residence[2]. He had one intent with respect to all of the cocaine – to distribute it illegally to persons intending to abuse the drug. Thus he says he committed one crime – trafficking in cocaine – but is being punished twice for it. He relies principally on *Rashad v. Burt*, 108 F. 3d 677 (6th Cir. 1997).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution affords a defendant three basic protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). The Double Jeopardy Clause was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-

---

[2] For purposes of arguing it was the same stash of cocaine, Stoermer argues the closeness of the car to the house. Later in his Reply he argues the State did not prove the car was within the curtilage.

4

94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Stoermer asserts the Second District's decision of his Double Jeopardy claim is both an unreasonable application of Supreme Court precedent and based on an unreasonable determination of the facts (Reply, ECF No. 16).  What the Second District decided is as follows:

> [*P24]  The second assignment of error alleges:
>
> THE TRIAL COURT ERRED IN ORDERING CONSECUTIVE SENTENCES FOR CONVICTIONS ARISING FROM THE SAME CONDUCT, PURSUANT TO R.C. § 2941.25 FOR SENTENCING PURPOSES. SAID ERROR VIOLATED STOERMER'S RIGHTS UNDER THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION 10 OF THE OHIO CONSTITUTION.
>
> [*P25]  Stoermer was found guilty on two counts of trafficking and on two counts of possession: one count of each was based on the cocaine found on Stoermer when he was arrested, and one count of each was based on the cocaine later found in the car. The trial court merged the two offenses for the cocaine found on Stoermer's person and merged the two offenses for the cocaine found in the car, but the court did not merge the offenses related to the 6 grams found on Stoermer with the 240 grams found in his car. Stoermer argues that the trial court erred.
>
> [*P26]  By statute, "[w]here the defendant's conduct * * * results in two or more offenses of the same or similar kind committed separately * * * the defendant may be convicted of all of them." R.C. 2941.25(B). The Ohio Supreme Court has explained that "the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses" if "the offenses were committed separately." *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 25.
>
> [*P27]  Stoermer cites several cases that he says show that his offenses were committed together and with the same animus. But as the State points out, in each of the cases Stoermer cites, the drugs were found in the same geographic location. For example, in one of

5

> the cited cases, *State v. Bradley,* 2015-Ohio-5421, 55 N.E.3d 580 (8th Dist.), the Eighth District emphasized the importance of the location in which the drugs were found and the fact that the offenses were based on the same drugs. The court concluded that, under the circumstances in that case, the defendant could not be sentenced separately for each individual package of cocaine. "Although separately packaged," said the court, "the cocaine found in [the defendant]'s possession was stored together, inside one large baggie. * * * The subject drugs were being transported at the same time and were discovered in the same location." *Id.* at ¶ 43.
>
> [*P28] Here, the separately packaged cocaine was found in two geographically separate locations—Stoermer's person and the car—and at separate times as a result of separate searches. The cocaine was not being stored together, and it was being transported separately. Under these circumstances, we believe that the trial court properly concluded that the two sets of offenses were committed separately. Consequently, they were not allied offenses, and Stoermer may be convicted and sentenced for both sets of offenses.
>
> [*P29] The second assignment of error is overruled.

*State v. Stoermer*, 2018-Ohio-4522.

Stoermer combined Ohio Revised Code § 2941.25 and Double Jeopardy claims on direct appeal. For the habeas petitioner, this approach is a double-edged sword: it preserved the constitutional claim for later habeas presentation while allowing the appellate court the option of granting relief on the statutory claim. On the other hand, it means the appellate court's decision on the combined claim includes a decision of the constitutional claim on the merits, a decision which is entitled to deferential review under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA").

As noted above, Stoermer relies principally on *Rashad, supra*. The facts are remarkably parallel. Rashad possessed distribution quantities of drugs, principally cocaine, in his home which police seized pursuant to a search. A later tip from an informant led them to search his car, which had been present at the residence at the time it was searched, and wherein they found another

6

distribution quantity of illicit drugs. Unlike Stoermer, Rashad was prosecuted separately for the two quantities of drugs, a fact the Sixth Circuit found made the Supreme Court decision of *Blockburger v. United States*, 284 U.S. 299, 304 (1932), distinguishable. A District Judge had granted habeas corpus relief on Double Jeopardy grounds and the Sixth Circuit affirmed by a 2-1 majority, concluding that possession of the two stashes for distribution constituted the same offense.

*Rashad* is importantly different from the present case because of when it was decided. Rashad's crime had occurred in 1988 and his second conviction (for the drugs in the car) was affirmed on appeal in June 1992 with the Michigan Supreme Court denying review in May 1993. 108 F.3d at 679. He did not seek habeas relief until a year later and the District Court did not decide the case until November 1995. *Id.* He appealed, but the Sixth Circuit did not hear oral argument until October, 1996, and did not decide the case until March 1997. *Id.* at 677.

A critically significant event happened between the District Court's grant of relief and the oral argument on appeal. On April 24, 1996, President Clinton signed the AEDPA into law. The AEDPA is not mentioned in the *Rashad* opinion and there was at that time controversy in the lower courts about whether it applied retroactively to cases like Rashad's where the state court decision occurred before it was enacted. In *Lindh v. Murphy*, 521 U.S. 320 (1997), the Supreme Court held the AEDPA applied to all habeas cases filed after April 24, 1996. Then in *Slack v. McDaniel*, 529 U.S. 473 (2000), it held the AEDPA applies to appeals taken after April 24, 1996, even though the case was filed in district court before the AEDPA was enacted. Thus the AEDPA should have been applied in Rashad's case, although at the time *Rashad* was decided, the Sixth Circuit did not have the benefit of either *Lindh*, which was not decided until June, 1997, or of *Slack*.

Applying AEDPA, which *Lindh* and *Slack* compel us to do here, makes a significant

7

difference. The circuit court in *Rashad* was able to decide the Double Jeopardy question *de novo*. AEDPA, however, requires us to (1) defer to the state courts unless they decided the case unreasonably and (2) measure the state courts' reasonableness only against Supreme Court precedent. Specifically,

> [i]n analyzing whether a state-court decision is contrary to or an unreasonable application of federal law, we look only to clearly established Supreme Court precedent that existed when the state court rendered its decision. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). A state-court decision is contrary to that precedent if the state court's reasoning or result contradicts that precedent. *Early v. Packer,* 537 U.S. 3, 8 (2002). And the state court unreasonably applies clearly established law when it correctly identifies the governing legal rule but applies it unreasonably to the facts. *White v. Woodall*, 572 U.S. 415, 426 (2014). The application must have been "objectively unreasonable" such that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 419–420 (quoting *Harrington*, 562 U.S. at 103).

*Coleman v. Bradshaw,* ___ F. 3d ___, 2020 U.S. App. LEXIS 28243 *11 (6th Cir. Sept. 4, 2020). Indeed, only holdings of the Supreme Court, not dicta in its opinions, can warrant habeas corpus relief. *Bryan v. Bobby*, 843 F.3d 1099 (6th Cir. 2016), citing *White v. Woodall,* 572 U.S. 415 (2014). Thus *Rashad* is not applicable here, either in itself or in its citation of similar decisions from other federal circuit courts. Rather, we are obliged to measure the Second District's decision directly against Supreme Court holdings.

While Stoermer asserts "the state court unreasonably failed to apply established Supreme Court precedent in reaching its erroneous and unreasonable conclusions," (Reply, ECF No. 16, PageID 980), he does not say what those precedents are. Because it decided the case on the basis of Ohio Revised Code § 2941.25, the Second District also did not cite any Supreme Court case law in its decision. As noted, the 2941.25/Double Jeopardy claim was Stoermer's second

8

assignment of error on direct appeal.  In arguing that assignment, Stoermer's counsel cited ten Ohio cases and no federal cases at all.  (Appellant's Brief, State Court Record, ECF No. 8, PageID 107-11). Indeed, the only connection made with the Double Jeopardy Clause is a quotation from *State v. Underwood*, 124 Ohio St. 3d 365 (2010), where the Supreme Court of Ohio opined that Ohio Revised Code § 2941.25 "codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits [*sic*; "prohibit" in the text cited] multiple punishments for the same offense."

The United States Supreme Court has held the test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  In this case Stoermer was indicted on two counts related to the cocaine found on his person, Counts Four and Five; and on two counts related to the cocaine found in his car, Counts Two and Three (Indictment, State Court Record, Ex. 1).

Ohio Revised Code § 2925.11(A) provides "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."  § 2925.11(C) provides that possession of more than the bulk amount of cocaine but less than five times bulk amount is a third degree felony; possession of between fifty and one hundred times bulk is a first degree felony.

Ohio Revised Code § 2925.03(A) provides "No person shall knowingly (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."  A person who violates this provision is guilty of aggravated trafficking.  § 2925.03(C) provides that aggravated trafficking of more than the bulk amount of cocaine but less

9

than five times bulk amount is a third degree felony; aggravated trafficking of between fifty and one hundred times bulk is a first degree felony.

When Stoermer was convicted of all four drug counts in the Indictment, the trial judge merged the convictions of Counts Two and Three and of Counts Four and Five (Judgment Entry, State Court Record, ECF No. 8, PageID 73), implicitly finding that each pair of convictions were required to be merged under Ohio Revised Code § 2941.25.  Not surprisingly, the State elected to have Stoermer sentenced for the two trafficking offenses.

Applying the *Blockburger* test, the Magistrate Judge notes that the two trafficking convictions here required proof of different amounts of drugs, bulk to five times bulk for the drugs recovered from the house, fifty to one hundred times bulk for those recovered from the car.  Thus each of the convictions required proof of an element not required for the other.  That alone is sufficient to satisfy the *Blockburger/Dixon* test.

In his Reply, Stoermer argues the lack of "separateness" of the underlying facts.  He argues his intent was the same as to both quantities, and the verdicts and Second District decision support that claim.  He argues that his possession of both quantities occurred at the same time and that argument is also supported by the record[3].  Finally he argues that the two quantities were not found at geographically separate locations.  The record fully supports a finding that both quantities were found within the ambit of a location described by his house and a car within the curtilage. However, the Second District found that the quantities were sufficiently separate to satisfy Ohio Revised Code § 2941.25:

> [*P28]  Here, the separately packaged cocaine was found in two geographically separate locations—Stoermer's person and the car— and at separate times as a result of separate searches. The cocaine

---

[3] The inference from where the drugs were found to the statutory element of possession is much more direct in the case of drugs found on his person; constructive possession of the drugs in the car requires a longer chain of inferences.

> was not being stored together, and it was being transported separately. Under these circumstances, we believe that the trial court properly concluded that the two sets of offenses were committed separately. Consequently, they were not allied offenses, and Stoermer may be convicted and sentenced for both sets of offenses.

*State v. Stoermer,* 2018-Ohio-4522. The Sixth Circuit has held that an Ohio court of appeals decision of a double jeopardy claim which is limited to the application of Ohio Rev. Code § 2941.25 is entirely dispositive of the federal double jeopardy claim. *Jackson v. Smith*, 745 F.3d 206, 210 (6th Cir. 2014), citing *State v. Rance*, 85 Ohio St. 3d 632, 705 (1999), *overruled by State v. Johnson*, 128 Ohio St. 3d 153 (2010).

Stoermer's First Ground for Relief is without merit and should be dismissed.

**Ground Two: Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Stoermer asserts he received ineffective assistance of trial counsel in presenting his motion to suppress. Respondent defends Ground Two on the merits, asserting that the Second District's decision of this claim on appeal from denial of post-conviction relief is entitled to deference under AEDPA (Return, ECF No. 9, PageID 873, *et seq.,* citing *State v. Stoermer,* 2019-Ohio-3804 (Ohio App. 2d Dist. Sept. 20, 2019).)

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the

11

> defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009). *Strickland* itself holds that if a defendant fails on one of its prongs, the habeas court need not discuss the other.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S.

86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

Stoermer's sole assignment of error on appeal was that the trial court had abused its discretion in dismissing his post-conviction petition without a hearing because he had presented sufficient evidence *dehors* the record to entitle him to a hearing. The evidence in question had been presented by affidavit and the Second District evaluated the trial court's rejection of that evidence under the governing Ohio standard from *State v. Calhoun*, 86 Ohio St.3d 279 (1999). The Second District noted the many contradictions between Stoermer's affidavit in post-conviction and his trial testimony. *State v. Stoermer*, 2019-Ohio- 3804, ¶¶ 17-18. On that basis, the court affirmed the trial court's denial of the petition.

In his Reply, Stoermer asserts "[t]he key issue in this case was the warrantless entry of the police into Stoermer' s apartment." (ECF No. 16, PageID 980.) The Second District's opinion cites several places in his trial testimony where Stoermer fought the conclusion that the room where he and the gun were found was his separate private apartment, in an attempt to suggest someone else had put the gun where it was found.

13

Next Stoermer adverts to Aaron Smith's affidavit submitted in post-conviction which he says was unrebutted and the facts in which were known to his trial attorney prior to the suppression hearing (Reply, ECF No. 16, PageID 980-81).

Acknowledging that he is not "raising a Fourth Amendment claim on its merits,"[4] he acknowledges his burden to show his suppression motion would have prevailed under the Fourth Amendment but for the ineffective assistance of trial counsel and proceeds with a lengthy discussion of the Fourth Amendment including the community caretaker exception (Reply, ECF No. 16, PageID 981-86).

Applying that exception, the state had claimed that Aaron Smith, upon being arrested, had asked the police to ask Stoermer to watch them. Stoermer claims Smith, in his post-conviction affidavit, adamantly denies he made any such request. *Id.* at PageID 987. Smith does indeed make such a denial in his July 24, 2018, Affidavit (State Court Record, ECF No. 8, PageID 303). At some unspecified date after his June 21, 2016, arrest, he swears he told Stoermer that. *Id.* Then at a pre-trial conference in February 2017 he claims he told the same thing to Stoermer's attorney as well as that, in general, the police account of what happened "was not accurate." *Id.* In the same Affidavit, Smith avers that on June 21, 2016, the date of the events in suit, he heard a knock on the door, took a gun to the door "for his protection," then attempted to conceal the gun under one of his sleeping children when the police said they had a warrant for his arrest. *Id.*

The Second District's decision offers no analysis of Smith's Affidavit. The trial judge noted that trial counsel may have declined to use Smith as a witness because he was being arrested on felony charges (Entry, State Court Record, ECF No. 8, PageID 310).

Stoermer claims his trial counsel "had before him all of the facts needed to defeat the application

---

[4] Presumably because of the bar of *Stone v. Powell*, 428 U.S. 465 (1976).

14

of the community caretaker exception and he presented none of them to the court." (Reply, ECF No. 16, PageID 988). But that argument assumes Smith's denial that he asked for Stoermer as a babysitter would have been believed in that face of testimony from multiple police officers to the contrary.

According to Stoermer, both the trial court and the Second District treated Attorney Latham's decision not to call Smith at the suppression hearing a strategic decision (Reply, ECF No. 16, PageID 989). Stoermer responds:

> Here, nothing in the record demonstrates that trial counsel, Sam Latham, exercised reasoned judgment in deciding not to call Smith. Instead, the state appellate court simply labeled the decision as strategic thereby immunizing it from constitutional scrutiny.

*Id.* What the Second District actually concluded was that the suppression hearing strategy, "in which Stoermer actively participated, belied the claims he made in his [post-conviction] affidavit." *State v. Stoermer*, 2019-Ohio- 3804, ¶ 18. It is the contradiction between Stoermer's suppression hearing testimony and his post-conviction affidavit that the Second District discusses.

There is no discussion at all of Smith's post-conviction affidavit. Stoermer implies that the Second District's labeling of Attorney Latham's decision not to call Smith at the suppression hearing is just a convenient labeling to avoid analysis. But the fact that, as Stoermer says, there is nothing in the record that reflects Latham's judgment does not mean Stoermer prevails on this point. Was Smith willing to testify at the suppression hearing to the same effect as he later averred in his affidavit? Recall that he had been arrested for a felony in the same incident and in the course of the arrest had attempted to hide a loaded handgun under his sleeping child. Would he have been willing to risk incriminating cross-examination about the felony and/or about the grossly stupid act with the gun?[5] Even if he had been willing to testify then as he averred in his affidavit, would

---

[5] Stoermer asserts that the charges against Smith had been dismissed by the time of the suppression hearing and Latham knew this. As proof he cites Latham's cross-examination of the arresting officer at trial (Reply, ECF No. 16, citing Trial Transcript, ECF No. 8-1, PageID 400). At that point in the cross-examination the officer reveals his memory that the warrant for Smith's arrest was for "fleeing" and the officer was not aware that charge had been

15

it have represented sound judgment to call him? Even if there is no record evidence of Latham's thought process, assuming he knew about Smith what we now know, it cannot be said to have been a bad decision not to put him on the stand.

Stoermer's second complaint about attorney Latham's performance is that he did not contest the claim that Stoermer's car was within the curtilage of the house and therefore searchable under the aegis of the search warrant for the house (Reply, ECF No. 16, PageID 993-94). Stoermer claims "[t]he State failed to meet its burden to producing evidence that the car was in the curtilage." *Id.* at PageID 994.

This sub-claim of ineffective assistance of trial counsel is procedurally defaulted because it was not submitted to the state courts as part of Stoermer's post-conviction petition (See Petition, State Court Record, ECF No. 8, Ex. 23, PageID 299-300.) Rather the sole claim presented there is the claim related to failure to present Smith's testimony at the suppression hearing.

Assuming that the State had a duty to present evidence that the car was within the curtilage and that failure to do so should have resulted in granting the motion to suppress, the claim that Attorney Latham provided ineffective assistance of trial counsel by not raising this claim is also procedurally defaulted by Stoermer's failure to raise it on direct appeal. Again, turning to Appellant's Brief on appeal, the assignment of error as to the motion to suppress was directed to the merits of the Fourth Amendment claim (State Court Record, ECF No. 8, PageID 100-07). The curtilage issue is argued at some length, but without any claim that Latham failed to present the issue properly. The Third Assignment of Error on direct appeal, which did allege ineffective assistance of trial counsel, was directed to Attorney Latham's performance at trial and not at the suppression hearing.

---

dismissed. But when? Before the suppression hearing?

Finally, this sub-claim is not made in the Petition, but was raised for the first time in the Reply. A district court may decline to review a claim a petitioner raises for the first time in his traverse or reply. *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), *citing Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).

In his Reply Stoermer argues "[t]he state court's determinations on the payment of rent were also unreasonable." (Reply, ECF No. 16, PageID 997.) There follows a discussion of the supposed discrepancy between his trial testimony (no mention of rent) and post-conviction affidavit (rent paid). Stoermer argues the point as if the Second District put emphasis on his non-payment of rent as if it showed he had no protectible privacy interest in the room in which he was sleeping when arrested. When one reads the Second District's language about rent in context, it appears the court understood that in focusing at trial on the tenuousness and non-exclusive access to the space, Stoermer was trying to support the inference that somebody else put the gun in his bed and therefore he did not "possess" it so as to have had possession of a weapon under disability, the first count of the Indictment. By the time the case reached the post-conviction stage, he was more interested in proving he had a protectible privacy interest in the space. The point of the Second District's analysis is not simply the contradiction of non-payment of rent in one presentation versus payment of rent in the other. It is rather the lack of credibility in the two stances about access to the space, considered together, that made it not an abuse of discretion to discount the affidavits and refuse to hold an evidentiary hearing on the post-conviction petition.

The Second District's determination of facts is not unreasonable, given the evidence before them. Its conclusion that Stoermer had not proved ineffective assistance of trial counsel at the suppression hearing is not an unreasonable application of *Strickland*. Therefore Stoermer's Second Ground for Relief should be dismissed.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

November 2, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.