# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

CASEY STOERMER,

        Petitioner,    :    Case No. 3:20-cv-133

  - vs -                    District Judge Thomas M. Rose
                              Magistrate Judge Michael R. Merz

Warden,
  London Correctional Institution,

                              :
        Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Motion for Reconsideration (ECF No. 23). Petitioner makes the Motion under Fed.R.Civ.P. 59(e) and has timely filed it within twenty-eight days of judgment, to wit, on December 16, 2020. *Id.* at PageID 1046.

Petitioner correctly notes that the Court adopted the Magistrate Judge's Report and Recommendations because it found that Petitioner had not objected (Order Adopting Report, ECF No. 19). Petitioner claims this finding is incorrect in that he did file timely Objections.

The Report was filed November 2, 2020, and mailed by the Clerk to Petitioner the same day (ECF No. 18). The Report notified Petitioner that he had seventeen days to file objections, or until November 19, 2020. Petitioner reports that he did not receive the Report until November 6, 2020 (ECF No. 23, PageID 1039). Petitioner reports that he calculated the due date as November 23, 2020. *Id.* That is presumably because he believes he was not served until he actually received the document in that November 23, 2020, is seventeen days after the date of receipt. However,

1

under Fed.R.Civ.P. 5, service by mail is complete upon mailing, not upon receipt. See Fed.R.Civ.P. 5(b)(2)(C).

Petitioner explains that as soon as he received the Report, he drafted a motion requesting a thirty-day extension to December 23, 2020, and mailed it November 9, 2020. *Id.* However, the Motion for Extension contains no certificate of deposit in the prison mail nor any date in the Certificate of Service on the Attorney General; it is postmarked November 24, 2020. *Id.* at PageID 1034. Petitioner claims in the Motion for Reconsideration that he deposited the Motion to Extend in prison mail on the 23rd, but he never made that claim until after the Court had stricken the Objections. For that reason, the Objections were stricken as untimely when they eventually arrived at the Court on December 1, 2020, the same day Judge Rose entered judgment (ECF No. 21).

Moreover, Petitioner seems to assume that the granting of extensions of time is somehow automatic so that if one requests an extension on the date a filing is due, the litigant is entitled to the extension. Fed.R.Civ.P. 6(b)(1)(A) provides a court **may**, not must, upon a showing of good cause, extend the time for filings. A litigant, lawyer or non-lawyer, who files a request for extension of time at the very last minute runs a risk that the Court will not find good cause.

Although the Objections were not filed within the time required by Fed.R.Civ.P. 72, the Court can consider the arguments they raise as part of deciding the Motion for Reconsideration. The standard of review, however, is different. A District Judge must review *de novo* any portion of a Magistrate Judge's report and recommendations to which objection is made. However, for a district court to grant relief under Rule 59(e), "there must be '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Betts v. Costco Wholesale Corp.,* 558 F.3d 461, 474 (6th Cir. 2009) (quoting *Henderson v. Walled Lake Consol. Sch.,* 469 F.3d 479, 496 (6th Cir. 2006)).

2

> Motions to alter or amend judgment may be granted if there is a clear error of law, *see Sault Ste. Marie Tribe*, 146 F.3d at 374, newly discovered evidence, *see id.*, an intervening change in controlling constitutional law, *Collison v. International Chem. Workers Union, Local 217*, 34 F.3d 233, 236 (4th Cir. 1994); *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 90-91 n.3 (1st Cir. 1993); *School District No. 1J v. ACANDS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993), or to prevent manifest injustice. *Davis*, 912 F.2d at 133; *Collison*, 34 F.3d at 236; *Hayes*, 8 F.3d at 90-91 n.3. *See also North River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

*Gencorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999), accord, *Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 551-52 (6th Cir. 2011), quoting *Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010).

**Ground One: Violation of the Double Jeopardy Clause**

In his First Ground for Relief, Stoermer claims his convictions for two counts of trafficking in cocaine violate the Double Jeopardy Clause because they are the same offense. The Report concluded that the Second District Court of Appeals' decision that these were separate offenses under Ohio Revised Code § 2941.25 was conclusive of Stoermer's Double Jeopardy claim and entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), codified at 28 U.S.C. § 2254(d)(1).

Deference is due under that statute unless the state court's decision of the constitutional issues is an objectively unreasonable application of clearly established Supreme Court precedent. While Stoermer asserted that the state court decision contravened Supreme Court precedent, the Report noted that Stoermer had cited no such precedent in his Reply (Report, ECF No. 18, PageID 1011). The only two such cases cited in the Objections are *United States v. Dixon*, 509 U.S. 688, 696 (1993), and

3

*Blockburger v. United States*, 284 U.S. 299, 304 (1932), which both hold that the test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other."

The Report relied on *Blockburger* and *Dixon* to conclude the two offenses in this case were different because they contained different elements: the State had to prove Stoermer possessed more than the bulk amount of cocaine but less than five times bulk for the amount seized from his person, while it had to prove between fifty and one hundred times bulk for the cocaine seized from his car (Report, ECF No. 18, PageID 1012).

In his Objections, Stoermer argues these different amounts are not different elements, but rather sentencing factors (ECF No. 20, PageID 1023). He asserts the Report improperly focused on Ohio Revised Code § 2925.03(C), when he was convicted of violating Ohio Revised Code § 2925.03(A)(2)(Objections, ECF No. 20, PageID 1024).

What the Report actually found was that Stoermer was convicted of two counts of violating Ohio Revised Code § 2925.03(A)(2)[preparing for distribution] along with specifications of amounts as required by Ohio Revised Code § 2925.03(C). As to each count of trafficking, the latter statute requires a finding of the amount, bulk but less than five times bulk under Ohio Revised Code § 2925.03(C)(1)(c) and fifty to one hundred times bulk under Ohio Revised Code § 2925.03(C)(1)(e). The trial court required the jury to make findings beyond a reasonable doubt as to the amounts and the jury returned verdicts that specified amounts (Verdicts, State Court Record, ECF No. 8, PageID 68-71). The consequence of those findings is to classify the offenses as felonies of the third and first degree respectively which in turn controls the sentencing range.[1]

---

[1] The Report includes no discussion of the firearm and juvenile location specifications, which are not at issue in this habeas case.

4

The Supreme Court has given a constitutional definition of what an element of a crime is. "[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *quoting Jones v. United States,* 526 U.S. 227 (1999).  In *Blakely v. Washington*, 542 U.S. 296 (2004), the Court held any fact which increases the sentence beyond a legislatively-mandated guideline, even if within a statutory maximum for the offense, must be pled as an element in the indictment and proved to the jury beyond a reasonable doubt.

Because the drug quantities in this case had to be proven to the jury beyond a reasonable doubt, those quantities constitute "elements" for purposes of *Blockburger* and *Dixon*.  Stoermer's Objection directed to *Blockburger* and *Dixon* should be overruled.

Stoermer also objects that the state court failed to apply clearly established Supreme Court precedent when it found that the drugs underlying the two convictions were found in separate geographic locations (ECF No. 20, PageID 1025, citing *Collins v. Virginia*, 138 S. Ct. 1663 (2018), and *Florida v. Jardines,* 569 U. S. 1, 6 (2013)[2].

The Report noted that the Second District found that the physical[3] separation of the two quantities of cocaine was sufficient to support separate convictions under Ohio Revised Code § 2941.25 (ECF No. 18, PageID 1023-24, citing *State v. Stoermer,* 2018-Ohio-4522, ¶ 28).  The Second District's decision is in no way an unreasonable application of these two decisions.  In *Collins*, the Supreme Court held that a motorcycle parked within the curtilage of a residence is within the Fourth Amendment's protection of the home and not subject to the so-called automobile excerption.  There is

---

[2] Cites by Stoermer as 561 U.S. 1.
[3] The Second District used the word "geographical," but there is no ultimate legal significance to the use of that word.

no holding that drugs found in a car within the curtilage and drugs found on the car's owner inside the home must be treated as one quantity of drugs for Double Jeopardy purposes. *Jardines* is also a Fourth Amendment case and has no holding relevant to the Double Jeopardy claim.

Stoermer has not shown any error as to the Report's conclusion that Ground One should be dismissed.

**Ground Two: Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Stoermer asserts he received ineffective assistance of trial counsel in presenting his motion to suppress. Petitioner first presented this claim in a petition for post-conviction relief which the trial court dismissed without an evidentiary hearing (State Court Record, ECF No. 8, Ex. 25). Stoermer did not on appeal raise the substantive claim that he had received ineffective assistance of trial counsel. Instead, he claimed the trial court abused its discretion in not holding an evidentiary hearing:

> **First Assignment of Error**: the trial court abused its discretion by dismissing appellant's post-conviction petition as appellant presented evidence dehors the record containing sufficient operative facts to demonstrate that trial counsel was ineffective in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution, Article I, Sections 10 and 16, Ohio Constitution, and R.C. 2953.21.

(Appellant's Brief, Supplemental State Court Record, ECF No. 12, Ex. 28, PageID 914). This was Stoermer's only assignment of error on appeal, so the Second District was not given an opportunity to rule on the merits of Stoermer's ineffective assistance of trial counsel claim and it did not purport to do so. Rather, the Second District applied controlling Ohio law on the question of when a defendant is entitled to an evidentiary hearing in post-conviction. *State v. Stoermer,* 2019-Ohio-3804, ¶ 16 (Ohio App. 2d Dist. Sept. 20, 2019), citing *State v. Calhoun,* 86 Ohio St. 3d 279 (1999).

6

Because he did not present his substantive Sixth Amendment ineffective assistance of trial counsel claim to the Second District, but only his procedural claim of a right to an evidentiary hearing, Stoermer has not fairly presented the substantive claim to the Ohio courts and the claim is therefore procedurally defaulted. Although the State defended this Ground for Relief on the merits, it is not inappropriate for the Court to raise a procedural default defense *sua sponte*. *Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004); *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002)(§ 2254 capital case)*; White v. Mitchell,* 431 F.3d 517, 514 (6th Cir. 2005)(capital case); *Elzy v. United States,* 205 F.3d 882 (6th Cir. 2000)(§ 2255 case).

Apart from procedural default, Stoermer has not shown he is entitled to prevail on the merits of this claim. Because of *Cullen v. Pinholster*, 563 U.S. 170 (2011), he must do so on the basis of the facts presented to the state courts. In deciding the Assignment of Error, the Second District wrote:

> [*P17] In reviewing Stoermer's petition and supporting affidavits, we note that, other than his own statement regarding rent, there was no evidence to support the claim that Stoermer was renting the upstairs bedroom from Smith. Further, Stoermer's trial testimony contradicted his subsequent claim that he paid rent for the room and that the room was his private living space. Specifically, Stoermer testified at trial that due to his prior convictions, he had problems obtaining his own housing and generally tended to "stay from place to place with somebody else." Trial Tr. Vol. II, p. 67. He testified that, at the time he was arrested, he had been sporadically staying with Smith for approximately one month, but that he did not stay there every day. He did testify that the room was "designated as [his] private area when [he] stayed there[,]" and that it was "understood" that no one was supposed to go up to the bedroom when he was asleep or wanted to be alone. Id. at p. 68 and 73. However, he also testified "[i]t's my bedroom, but it's not, you know." Id. at p. 76. Indeed, he admitted that other people possibly entered it when he was not present and that the homeowners had use of the room. We note that Stoermer made no mention during trial of paying rent for the room, nor did he produce other evidence of a rental agreement. Indeed, it is clear from the entirety of the trial transcript that Stoermer's defense theory was premised upon a claim that he was

> merely a guest in the Smith home and that other people who had access to the room had left the gun in the bedroom, which precipitated his arrest.
>
> [*P18] In the present case, the same judge who presided over the trial also reviewed Stoermer's petition for postconviction relief and, thus, he was aware of the evidence presented at both the suppression hearing and the trial. Given that defense counsel's strategy, in which Stoermer actively participated, belied the claims made in his affidavit, we cannot say that the trial court abused its discretion in disregarding the affidavit testimony. Further, regardless of whether Smith identified Stoermer as the person he wanted to watch his children, it was not unreasonable for the police to conduct a search of the home to locate someone to tend the children. *Stoermer,* 2d Dist. Clark No. 2017-CA-93, 2018-Ohio-4522, ¶ 16-17. The need to locate care for the children was an exigent circumstance and the officers did not exceed that exigency by looking in the bedroom for an adult caretaker. *Id.*

*State v. Stoermer,* 2019-Ohio-3804.

In his Petition for post-conviction relief, Stoermer claimed he received ineffective assistance of trial counsel when his trial attorney failed to call a witness, Aaron Michael Smith, at the motion to suppress hearing (State Court Record, ECF No. 8, Ex. 23, PageID 294, 299). Specifically he argues:

> 19. Smith's affidavit is clear that he spoke with Stoerrner's trial counsel and told him that he never told the officers Stoermer would watch his children, and never indicated he "consented'" to the search of Stoermer's apartment. . . . At the time of Stoermer's **trial**, reasonable counsel would have secured Smith's testimony and called him as a witness.

*Id.* at PageID 300 (emphasis added). Smith's attached Affidavit of July 24, 2018, asserts that he told Stoermer and Stoermer's counsel at a pretrial conference in February 2017 "that the police officers' version of events were [sic] not accurate and I told him that at no time did I ever tell police that I wanted Casey Stoermer to watch my children." *Id.* at PageID 304.

Stoermer's own Affidavit in support of the post-conviction petition, sworn on January 8,

8

2019, avers:

> The upstairs portion of 344 W. Parkwood Avenue, Springfield, Ohio, was my private apartment when I stayed there in the Spring of 2016. I paid rent for the upstairs and I never gave anyone permission to enter my apartment. To maintain my privacy, the door at the bottom of the stairwell remained closed at all times. I am certain that I closed the door behind me when I went to bed on 6/20/2016.

*Id.* at PageID 305.

The Motion to Suppress hearing was held July 5, 2017 (Transcript, State Court Record, ECF No. 18, Attach. 1). Stoermer did not testify nor were any other witnesses called on behalf of the defense. The trial occurred October 2-3, 2017, and Stoermer was the sole witness for the defense (Transcript, State Court Record, ECF No. 8-2 and 8-3). In his testimony he volunteered that the upstairs was supposed to be his private area, but also testified that he and Smith had used cocaine together in that area the night before. He attributed the TEC 9 weapon found on his bed to Smith, who he said was a "registered gun owner" who carried a gun all the time.[4]

In denying the Petition for Post-Conviction Relief, the trial judge found there was no materiality to Smith's averment that he did not ask the officers to ask Smith to watch his children because the children had to be watched by someone because Smith was being arrested on a warrant (Entry, State Court Record, ECF No. 8, PageID 310). Second, he concluded it would have been reasonable not to call Smith as a witness because he was also arrested for a felony and could reasonably have been thought not to be credible. *Id.* Finally, the judge noted that Stoermer could have testified at the suppression hearing about his living arrangements while maintaining his constitutional protection. *Id.*

---

[4] When the arresting officers entered the house with a warrant for Smith's arrest, he hid the gun then in his possession under a blanket on which his child was sleeping. This was obviously not the gun the officers immediately thereafter seized from Stoermer.

9

Stoermer objects that Smith's wife could have been called. The Magistrate Judge puts to one side the question of whether there was an alternative caretaker who might have been available, since the underlying facts are not developed in the state court record. The other two points made by the trial judge are directly relevant to the ineffective assistance of trial counsel claim.

Trial counsel could very well have determined Smith would not be a credible witness. By Stoermer's account he had done cocaine with Stoermer the night before, he was being arrested on a felony warrant, and he had placed a handgun under his own sleeping child. Assuming Smith would have testified as he avers in his Affidavit, he says nothing about Stoermer "renting" the upstairs. It was not deficient performance under *Strickland v. Washington,* 466 U.S. 668 (1984), to fail to call such a witness.

Even assuming Smith could have testified credibly about the facts in his Affidavit, Stoermer's claim fails on the prejudice prong of *Strickland*: anything about Stoermer's living arrangements about which Smith could have testified could also have come from Stoermer himself.

Granting for the sake of argument that Stoermer preserved the merits of his ineffective assistance of trial counsel claim by only appealing the procedural issue, the Second District's affirmance is not an objectively unreasonable application of *Strickland*. Stoermer's litigation positions were inconsistent. He wanted to assert the privacy of the upstairs apartment to support his suppression claim. But his having exclusive use of the space was at odds with his claiming the handgun found on his bed was Smith's, not his. In his Affidavit, Smith does not indicate any willingness to accept ownership of the gun, even though, as a "registered gun owner" by Stoermer's account, it would not have been incriminating.

**Conclusion**

Stoermer's Motion for Reconsideration, considered under the standard applicable to a motion under Fed.R.Civ.P. 59(e), does not establish his right to relief. Accordingly, it is respectfully recommended that the Motion be denied. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

December 21, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.